1  JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
    *jakro@kslaw.com*
2  AARON S. CRAIG (Bar No. 204741)
    *acraig@kslaw.com*
3  KING & SPALDING LLP
   633 West Fifth Street, Suite 1700
4  Los Angeles, CA 90071
   Telephone:   (213) 443-4355
5  Facsimile:   (213) 443-4310

6  JEFFREY S. BUCHOLTZ (*pro hac vice*)
    *jbucholtz@kslaw.com*
7  MARISA MALECK (*pro hac vice*)
    *mmaleck@kslaw.com*
8  KING & SPALDING LLP
   1700 Pennsylvania Avenue NW
9  Washington, DC 20006
   Telephone:   (202) 737-0500
10 Facsimile:   (202) 626-3737

11 Attorneys for Plaintiff and Counterdefendant
   ALLERGAN USA, INC.
12

13                 **UNITED STATES DISTRICT COURT**

14                 **CENTRAL DISTRICT OF CALIFORNIA**

15                      **SOUTHERN DIVISION**

16

17 ALLERGAN USA, INC.,                  Case No. 8:17-cv-01550-DOC-JDE

18       Plaintiff/Counterdefendant,    **PLAINTIFF ALLERGAN USA,**
                                         **INC.'S OPPOSITION TO**
19             v.                        **DEFENDANTS' MOTION TO**
                                         **EXCLUDE REPORT AND**
20 PRESCRIBER'S CHOICE, INC., and       **TESTIMONY OF JEFFERY A.**
   SINCERUS FLORIDA, LLC,               **STEC, PH.D**
21
22 Defendants/Counterclaimants.

23                                       Hearing Date: February 4, 2019
                                         Time:  12:00 p.m.
24                                       Ctrm: 9D
25
                                         Pre-Trial Conference: 02/04/2019
26                                       Trial Date:  02/12/2019
27                                       Complaint Filed: 09/07/2017

28
   OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE REPORT AND
                      TESTIMONY OF DR. STEC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In granting partial summary judgment to Plaintiff Allergan USA, Inc. ("Allergan USA"), this Court found that, before July 2018, Defendants Prescriber's Choice, Inc., and Sincerus Florida, LLC, were engaged in an unlawful business practice. ("Summary Judgment Order," Dkt. No. 150, PageID #:6095.)  The Court held that Defendants made multiple "literally false" statements about the legality of their business.  (*Id.* at PageID #:6099-6102.)

Jeffery Stec, Ph.D., is Allergan USA's expert for calculating those losses. Defendants do not challenge Dr. Stec's qualifications as an expert.  He will testify that Defendants' wrongful conduct caused Allergan USA to lose sales.  Defendants do not challenge that conclusion as a basis to exclude Dr. Stec's testimony.  Dr. Stec calculated Allergan USA's share of the prescription drug markets for acne and rosacea, and Defendants do not challenge that calculation.  Dr. Stec calculated Defendants' revenues on the sales that Allergan would have made but for Defendants' misconduct, and Defendants do not challenge that calculation either. Dr. Stec also calculated Allergan USA's revenue on its drug sales, which Defendants do not challenge.  Defendants challenge only Dr. Stec's bottom-line calculation of lost profits, disagreeing with the fact that Dr. Stec allegedly took the costs of Allergan USA's parent company into account in determining profits. Defendants' argument is legally wrong, relying exclusively on inapposite cases from the patent context where the patentee did not have any sales of the patented article and therefore could not claim damages.  But even if Defendants were correct on the law, it would go only to the weight of Dr. Stec's opinions, not their admissibility.  Defendants are free to argue to the jury that Dr. Stec's calculation is incorrect, but they do not provide a basis to exclude his opinions outright, and other courts have rejected nearly identical *Daubert* challenges.

Defendants also argue that Dr. Stec must assign a particular damages

OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE REPORT AND TESTIMONY OF DR. STEC

amount to each unlawful act Defendants committed.  That is also wrong as a matter of law.  But, again, even if Defendants were right it would not justify excluding Dr. Stec's report.  In the Summary Judgment Order, the Court found that Defendants engaged in an unlawful business practice through July 2018, and made the material false statement to their customers that Defendants complied with the law.  In the but-for world, Defendants would have made no sales through that period, and Allergan would have obtained the full amount of lost profits calculated by Dr. Stec. Allergan USA does not need to disaggregate its damages.  Defendants' motion should be denied.

## II.   ARGUMENT

### A.   Allergan USA's Damages Need Not Be Calculated with Certainty

Defendants' motion appears to be based on the idea that Allergan USA must prove its lost profits with surgical precision—revenues and costs calculated to the cent, each penny assigned to a particular claim.  Not so.  The Lanham Act does not require "empirical quantification."  *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1113 (9th Cir. 2012).  The Ninth Circuit will accept even "'crude' measures of damages," if they are "based upon reasonable inferences."  *Id.* at 1112.  As long as the evidence permits "a fair assessment of the damages," it is admissible.  *Id.* at 1113; *see* 5 McCarthy on Trademarks and Unfair Competition § 30:79 (5th ed.) (noting "damages resulting from lost profits need not be proven with 'certainty,'" and "the amount of damages can be proven even if only approximate").

For that reason, "criticisms of an expert's method of [lost profits] calculation [are] a matter for the jury's consideration in weighing that evidence."  *Humetrix, Inc., v. Gemplus S.C.A.*, 268 F.3d 910, 920 (9th Cir. 2001).  That is the case here. Defendants can argue their challenges to Dr. Stec's report and testimony to the jury.  But because his opinions are based on a sound methodology using inferences that are more than reasonable, they should be admitted.  *Id.*

2

OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE REPORT AND
TESTIMONY OF DR. STEC

## B.      Dr. Stec's Lost Profits Calculation Is Proper

Defendants argue first that Dr. Stec's lost profits calculation is unreliable because he considered the manufacturing costs of Allergan USA's parent, Allergan Sales.  As a first instance, Defendants have proffered no evidence to support its basic premise—that the costs being considered by Dr. Stec were in fact incurred by Allergan Sales and not by Allergan USA.  Instead Defendants ask the Court to assume the cost information used by Dr. Stec related to costs incurred by Allergan USA and not by its parent, Allergan Sales.  Defendants' motion therefore fails for lack of proof.

Nevertheless, even if Defendants had introduced such evidence, their motion would still fail.  Defendants' cases do not support the conclusion that relying on a manufacturing parent company's costs to calculate the profits of the plaintiff-subsidiary is unreliable or grounds to exclude the expert's testimony.  First, every one of Defendants' cases is a patent-infringement case and does not involve the calculation of lost profits under the Lanham Act.  Defendants rely on a line of cases where patent-owning plaintiffs play no role in the manufacture or sale of the patented articles, but rather have granted a license to its affiliates to do so.  These cases stand for nothing more than the general proposition that a plaintiff who does not sell a product cannot recover lost profits on another entity's sales of that product.  For example, the plaintiff in *Poly-America, LP v. GSE Lining Tech., Inc.*, did not sell the patented article at issue but still tried to recover its licensee's profits.  383 F.3d 1303, 1311 (Fed. Cir. 2004).  The court held that the plaintiff could not recover its licensee's profits because "the patentee needs to have been selling some item . . . in order to claim damages consisting of lost profits."  *Id.* Similarly, in both *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1374-75 (Fed. Cir. 2015), *vacated sub nom. Medtronic Sofamor Danek USA, Inc. v. NuVasive, Inc.*, 136 S. Ct. 893 (2016), and *Volterra Semiconductor Corp. v. Primarion, Inc.*, 2013 WL 6905555, at *4 (N.D. Cal. Sept. 24, 2013), the plaintiffs

3

1   were trying to recover profits on sales made by a different entity.

2      These cases are inapposite.  They merely "recognize the general rule that if

3   the [plaintiff] is not selling a product, by definition there can be no lost profits."

4   *Card-Monroe Corp. v. Tuftco Corp.*, 270 F. Supp. 3d 967, 1029 (E.D. Tenn. 2017)

5   (describing *Poly-America*).  However, "where a patentee sells its own patented

6   products, this rule does not apply."  *Id.*; *see Tinnus Enter.*, *LLC v. Telebrands*

7   *Corp.*, 2017 WL 9325372, at *4 (E.D. Tex. Sept. 11, 2017) (holding *Poly-America*

8   does not apply where "the evidence suggests that [plaintiff] had made sales of the

9   patented device").

10      Here, there is no dispute (and the Court has already found) that Allergan

11   USA sold, and continues to sell, Aczone, Tazorac and Rhofade.  Defendants do not

12   contend that Allergan USA is trying to recover profits from another company's

13   sales.  Therefore, Defendants' patent cases do not bar Allergan USA from

14   recovering lost profits.  *Card-Monroe*, 270 F. Supp. 3d at 1029; *Tinnus Enter.*,

15   2017 WL 9325372, at *4.

16      Defendants simply challenge the *method* by which Dr. Stec calculates those

17   lost profits by arguing that he should not be permitted to calculate Allergan USA's

18   profits by using Allergan Sales' manufacturing costs.  (Mot. at PageID #:6115-17.)

19   But, as noted, such an argument is "a matter for the jury's consideration."

20   *Humetrix*, 268 F.3d at 920.

21      Defendants' criticisms are misplaced in any event.  Dr. Stec's methodology

22   is nearly identical to the methodology approved by the court in *LG Elecs. USA,*

23   *Inc. v. Whirlpool Corp.*, 2010 WL 3397358 (N.D. Ill. Aug. 24, 2010).  There, LG

24   sued Whirlpool for false advertising under the Lanham Act, seeking to recover lost

25   profits associated with its lost sales of steam dryers.  *Id.* at *1.  The plaintiff in *LG*

26   *Elecs.* sold dryers in the United States which were manufactured by its Korean

27   parent company, and a portion of the profits of the enterprise was booked by the

28   parent company.  *Id.* at *8.  LG's expert included in his calculation of lost profits

4
OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE REPORT AND
TESTIMONY OF DR. STEC

the profits booked to LG's parent.  *Id.*  Whirlpool moved to exclude the expert, arguing, like Defendants here, that *Poly-America* barred the expert from using the parent's costs as the basis for his profitability analysis.  *Id.*  The court disagreed, holding that *Poly-America* did not apply because "the profit booked [to LG's parent] is still profit on [LG's] products."  *Id.*  The court held that the defendant had "presented no authority to demonstrate that the method employed by [LG's expert] to calculate lost profits under the Lanham Act is impermissible.  The challenges . . . are the proper subject of cross-examination."  *Id.* at *9.  So too here. Because Allergan USA is seeking to recover profits on its own sales, *Poly-America* does not apply.  And because *Poly-America* does not apply, Defendants have "no authority to demonstrate" that Dr. Stec's methodology is "impermissible."  *Id.* Defendants' motion to exclude Dr. Stec because his methodology allegedly includes calculating profits using the parent company's cost basis lacks factual and legal support, and it should be denied.

Defendants posit a thought-experiment about calculating a car-dealer's profits by calculating the different between the market resale price of the car and the manufacturer's marginal cost to produce it.  If, however, the entity that owned the dealership was a subsidiary of the manufacturer (which is almost never the case in the auto industry for a variety of reasons, including state franchise laws), this would be an entirely reasonable methodology for calculating lost profits.[1]

## C.    Dr. Stec Need Not Disaggregate Damages by Claim

Defendants' second challenge to Dr. Stec's calculation fares no better. Defendants argue that Allergan USA must calculate lost profits separately for each of Defendants' false statements.  But that is wrong: "a plaintiff need not disaggregate damages among those acts found to be unlawful."  *City of Vernon v.*

---

[1] Where the manufacturer and distributor are unrelated, Allergan agrees that such a methodology would be improper.

OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE REPORT AND TESTIMONY OF DR. STEC

*S. Cal. Edison Co.*, 955 F.2d 1361, 1372 (9th Cir. 1992).

Defendants' cases stand for an entirely different rule: that a plaintiff's damages must distinguish between the defendant's *lawful* and *unlawful* conduct. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 37 (2013) (rejecting "methodology that identifies damages that are not the result of the wrong"); *City of Vernon*, 955 F.2d at 1372 ("[Plaintiff's] study failed to segregate the losses, if any, caused by acts which were not antitrust violations from those that were."); *Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342, 1352 (9th Cir. 1985) ("[Plaintiff] provided no evidence on the amount of damages attributable only to the unlawful conduct."); *MCI Commc'ns Corp. v. Am. Tel. & Telegraph Co.*, 708 F.2d 1081, 1161 (7th Cir. 1983) ("An antitrust plaintiff must prove that his damages were caused by the unlawful acts of the defendant."); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1122 (C.D. Cal. 2015) (rejecting damages theory that "does not permit the court to calculate the true market price . . . absent the purported misrepresentations"); *ILC Peripherals Leasing Corp. v. IBM Corp.*, 458 F. Supp. 423, 434 (N.D. Cal. 1978) (finding "no reasonable basis in fact for the jury to determine what the effect on damages would be if it found one or more of the challenged acts lawful").[2]

Here, however, there was no lawful conduct. The Court has granted partial summary judgment that the Defendants were engaged in an unlawful business practice, at least through July 2018. (Summary Judgment Order at PageID #:6095.) The Court has also granted partial summary judgment that Defendants falsely advertised their drugs and business model by claiming that they complied

---

[2] These cases are also distinguishable for other reasons. None is a Lanham Act case. None analyzed an expert report under *Daubert*. And several address only what damages models can support class certification, not what evidence can be admitted in a non-class action. *E.g.*, *Comcast*, 569 U.S. at 34; *In re NJOY*, 120 F. Supp. 3d at 1122.

OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE REPORT AND TESTIMONY OF DR. STEC

with the law.  (Summary Judgment Order at PageID #:6099.)  The Court has granted partial summary judgment on the further issue that these false statements were material to Defendants' customers.  (Summary Judgment Order at PageID #:6102-6104.)  Defendants' misrepresentations were so fundamental as to the material issue of the legality of its business practices that in the "but-for" world, Defendants would not have made any sales of its acne and rosacea drugs, and that Defendants sales would have gone to the other participants in the market for prescription drugs that treat acne and rosacea, allocated by their market share.  This opinion is reasonable and the jury should be allowed to consider it.

Defendants have not challenged Dr. Stec's opinion that their false statements caused Allergan USA to lose sales.  And "[o]nce *causation* of damages has been established, the *amount* of damages may be determined by a just and reasonable estimate as long as the jury verdict is not the product of speculation or guess work."  *MCI*, 708 F.2d at 1161.  No "strict disaggregation of damages among the various unlawful acts" is required.  *Id.*

Defendants argue otherwise by claiming that Allergan USA must "limit its claims to statements that went to and could be relied upon by all customers in all jurisdictions."  (Mot. 8.)  But this Court already held that several of Defendants' statements were "literally false," and that other statements might prove to be.  (Summary Judgment Order at PageID #:6099-6102.)  And because Defendants' entire business—at least through July 2018—was illegal, and they lied about their business's legality, a jury could reasonably conclude they would not have sold any drugs but for their misconduct.  In that case, all of Allergan USA's damages would be attributable to Defendants' "unlawful acts," which were "intertwined with one another."  *MCI*, 708 F.2d at 1161.  To require Allergan USA to assign specific damages to each unlawful act would allow Defendants to "profit[] from their own

7

1    wrongdoing." *Id.*[3]

2    **III.   CONCLUSION**

3           Defendants' motion to exclude Dr. Stec's report and testimony should be

4    denied.

5

6    DATED: January 28, 2019            KING & SPALDING LLP

7
                                        By:  */s/ Joseph N. Akrotirianakis*
8                                       JOSEPH N. AKROTIRIANAKIS
                                        Attorneys for Plaintiff/Counterdefendant
9                                       ALLERGAN USA, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23   [3] On this point, it is telling that none of the cases Defendants cite excluded an

24   expert report before trial.  They addressed damages calculations that included
     claims the plaintiff had already abandoned or failed to prove.  *E.g.*, *Comcast*, 569

25   U.S. at 37 (rejecting damages model that depended on theories the district court
     had dismissed); *City of Vernon*, 955 F.2d at 1373 ("the district court and we have

26   already found that many of [defendant's] acts were proper").  That is not the case

27   here.  The Court has already found that Defendants broke the law, and Allergan

28   USA has not abandoned any of its claims.

                                        8
OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE REPORT AND
TESTIMONY OF DR. STEC